| 139 | 61 |
|-----|-----|
| 213 | 170 |

# PETITION OF SELLERS M. E. CHURCH.

APPEAL BY ANN REDMAN FROM THE COURT OF COMMON PLEAS
NO. 2 OF ALLEGHENY COUNTY.

Argued October 28, 1890—Decided January 5, 1891.
[To be reported.]

1. A conveyance of land to trustees and their successors in office forever, in trust for a use which is a charity to continue perpetually, will pass a title in fee-simple, notwithstanding the absence from the deed of any words of inheritance.

2. Such a conveyance for a charitable use does not create a conditional estate, but a trust for the charitable use, not liable to be defeated by non-user or alienation, in the absence of an express condition to that effect.

3. Land conveyed to trustees for the use of the members of a religious denomination as a place of worship forever, may be decreed to be sold freed from the trust, under the act of April 18, 1853, P. L. 503, the purchase money to be invested in other property to be held for the same uses.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 28 October Term 1890, Sup. Ct.; court below, No. 372 October Term 1889, C. P. No. 2.

On August 31, 1889, the Sellers Chapel Methodist Episcopal Church of Braddock borough presented a petition to the court below, praying for a decree for the sale of certain real estate, in substance averring:

That, by a deed dated April 16, 1889, Matthew Henning and Martha G., his wife, and William Redman and Ann, his wife, in consideration of $50, conveyed a certain lot of ground, then situated in Wilkins township, Allegheny county, now within the limits of the borough of Braddock, to John Kerr, James Kerr, Oliver Clark, John W. House and James Mc-Cleary, trustees, to have and to hold the same "unto them the said trustees and their successors in office forever, in trust that they shall erect and build, or cause to be erected and built, a house or place of worship for the use of the members of the

Statement of Facts.

Methodist Episcopal Church in the United States of America, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said church, at their general conference in the United States of America; and in further trust and confidence that they shall at all times forever hereafter permit such ministers and preachers belonging to the said church, as shall from time to time be duly authorized by the general conferences of the ministers and preachers of the said Methodist Episcopal Church, or by the annual conferences authorized by the said general conference, to preach and expound God's holy word therein."

That, in pursuance of the said trust, a house of worship was built upon said lot for the use of the members of the Methodist Episcopal Church in the United States of America and had since been so used by them; that the members of said church, so using the same, constituted the religious society petitioning, and said society was duly incorporated on September 7, 1867; that said lot of ground and house had become inadequate and unsuitable for the purposes of the said trust, and it was for the interest and advantage of the petitioner, and of all persons interested in the trusts, that said lot should be sold freed from the trusts aforesaid, and that the purchase money be held and applied in lieu thereof and for the same purposes and trusts; that the society, the petitioner, had bought, and had had conveyed to it in fee-simple, other land in the borough of Braddock more suitable for a place of worship for its members, and was building thereon a house of worship; that its charter provided that all its property, whether real personal or mixed, should be held in trust for the following purposes and on the following conditions, to wit: " That the corporation and its successors, and its board of trustees, shall at all times and forever permit the duly authorized ministers of the Methodist Episcopal Church of the United States, to occupy the pulpit and house of worship for preaching and expounding God's holy word, and for executing the discipline and administering the sacraments according to the doctrines, discipline and uses of the said church; and shall faithfully appropriate all the rents, issues and profits of said property, and all the proceeds of any sale or mortgage that may be made, to the use and benefit of said church, and in accordance with the discipline and usages thereof."

The petitioner, averring further, that these trusts were substantially the same as those expressed in the Henning and Redman deed; that a majority of all the male members of the society, the petitioner, acting in accordance with a provision in its charter, had authorized the sale of the property first mentioned, at a meeting called for that purpose and held after public notice thereof from the pulpit, prayed for a decree ordering that the lot, conveyed to the trustees aforesaid by Henning and Redman, be sold in fee-simple, wholly freed from the said trusts, the purchase money to be substituted therefor as regards enjoyment and ownership, and that such purchase money should be applied toward payment for the other property, so bought by the petitioner, and the erection of the house of worship thereon.

All the trustees named in the deed from Henning and Redman were dead except John W. House, who, by writing annexed to the petition, appeared, confessed the facts therein stated, and submitted to the order of the court, praying, however, to be relieved from executing the order of sale, and nominating P. S. Todd for that purpose. Rev. Noble G. Miller, presiding elder of the McKeesport district of the Pittsburgh conference of the Methodist Episcopal Church, in whose district and charge the Sellers Chapel church was, also appeared by paper filed with the petition, approving the action of the petitioner and joining in the prayer of the petition and in the nomination of P. S. Todd as trustee to sell.

Upon the reading of the petition, the court made the decree of sale prayed for, appointing P. S. Todd trustee to make the sale. On October 12, 1889, the trustee having reported a sale of the property for $10,500, and having entered security, the court confirmed the sale nisi ten days; and, on November 2d, on motion of the petitioner's counsel, the court directed a citation to issue warning the members, ministers and preachers of the Methodist Episcopal Church in the United States of America, and the general conference and annual conference of said church, and all other parties interested, to appear on November 30, 1889, and show cause why the prayer of the petitioner should not be granted, and why the decree of sale, and the decree of confirmation nisi, should not be approved, ratified and confirmed, ordering said citation to be served by publication. Service thereof was made accordingly.

On November 27, 1889, Ann Redman, describing herself as a member of the Methodist Episcopal Church in the United States of America, and widow of William Redman, deceased, one of the grantors in the deed recited in the petition, and as agent of Martha G. Henning, the widow of Matthew Henning, deceased, also a grantor in said deed, and as agent of the heirs at law of said William Redman and Matthew Henning, filed exceptions to the confirmation of the sale, objecting for the following reasons:

1. Because the said real estate is vested in said John Kerr et al., trustees, and their successors, for the use of the members of the Methodist Episcopal Church in the United States of America, for the uses mentioned in said deed; and petitioner has no title to said real estate other than what is common to all of the members of the said the Methodist Episcopal Church of the United States of America.[1]

2. Because petitioner has no right or authority, with or without the approval of the court, to sell said real estate, or divert the same from the uses mentioned in said deed.[2]

3. Because a sale of said real estate, as proposed by petitioner, would be a violation of the trust in said deed expressed, and would work a reversion of the real estate to the widows and heirs at law of said William Redman and Matthew Henning, deceased, and due and public notice thereof was given by exceptants, on the day of the alleged sale of said real estate, to bidders and purchasers thereof.[3]

Before hearing on the exceptions, an affidavit was filed, setting forth a copy of the minutes of "the Fourth Quarterly Conference of Braddock charge, McKeesport district, Pittsburgh Conference," embracing a resolution, adopted August 10, 1888, for the sale of the property in question in this proceeding.

—After argument, the court, EWING, P. J., finding that all the conditions laid down in the book of discipline of the Methodist Episcopal Church had been fully complied with; and that the exceptants had no standing to object to the sale, entered a decree overruling the exceptions,[1] to [3] confirming the sale,[5] and directing the making of a conveyance in pursuance thereof and that the purchase money should be substituted for the land and held upon the same trusts.

Thereupon Ann Redman, for herself and as agent, etc., took this appeal, specifying that the court erred:

Arguments.

1–3. In overruling the exceptions.[1] to [3]

4. In taking jurisdiction of the proceedings.

5. In confirming the sale reported.[5]

Mr. Thomas Patterson and Mr. George D. Riddle (with him Mr. Smith), for the appellant:

1. The donors of the land have a standing in this proceeding because the sale, if sustained, will pass " a fee-simple title, indefeasible by any party or persons having a present or expectant interest" in the premises: § 5, act of April 18, 1853, P. L. 503; Yard's Est., 15 W. N. 422. The act of 1853 is intended only to relieve against a want of power to convey in any person or set of persons, not against a lack of alienable quality in the estate itself, and does not justify a decree when exemption or immunity from sale inheres in the title: Burton's App., 57 Pa. 220; McClurg's Est., (Hawkins, P. J.,) 22 Pittsb. L. J. 133. This leads directly to the question, what character of estate did the trustees take under the original deed? For, if it was a base fee, or a fee limited to special uses, the attempt to pass a title under the act of 1853 must fail. On this point we contend:

2. The deed being in effect a donation for a specified purpose, there could not be a diversion of the land from the purpose to which it was dedicated, and this sale in effect strikes down the consideration of the grant: McKissick v. Pickle, 16 Pa. 140; s. c. 21 Pa. 236; Kirk v. King, 3 Pa. 436; Kerlin v. Campbell, 15 Pa. 500; Brendle v. Ger. Ref. Congregation, 33 Pa. 424. The duties of the trustees are active; the trust was created for the support of a special use which extended to the whole body of worshippers of this faith throughout the country, is not confined to any particular congregation, and vested before the petitioner's incorporation. The Sellers Chapel congregation, therefore, are not entitled to have the property sold: Latshaw's App., 122 Pa. 142. If there could be a sale, House, the surviving trustee, would be the party to petition for it. But the fact that there are no words of inheritance in the deed, is conclusive that a fee-simple was not conveyed to the trustees: Methodist Church v. Remington, 1 W. 219; Henderson v. Hunter, 59 Pa. 335. And the publication of the citation cannot conclude the rights of parties interested, even if brought

Opinion of the Court.

home to them, nor supply a want of authority in the petitioner to sell.

*Mr. John G. Bryant* (with him *Mr. E. J. Smail*), for the appellees:

Counsel cited: (1) As to the nature of the trusts and uses upon which the property in question was held, and the alienability of the estate granted: Wright v. Linn, 9 Pa. 433; McKissick v. Pickle, 16 Pa. 140; Griffitts v. Cope, 17 Pa. 96; Pickle v. McKissick, 21 Pa. 232; Barr v. Weld, 24 Pa. 84; Brendle v. Ger. Ref. Cong., 33 Pa. 415; Schier v. Church, 109 Mass. 1; Rawson v. Sch. Dist., 7 Allen 125; Brown v. Baptist Soc., 9 R. I. 177.     (2) As to the necessity of words of inheritance in the deed: 4 Kent Com., 304; Villiers v. Villiers, 2 Atk. 72; Cleveland v. Hallett, 6 Cush. 403; Gould v. Lamb, 11 Met. 84; Newhall v. Wheeler, 7 Mass. 189; 2 Washburn on Real Prop., *186, 187; Doe v. Considine, 6 Wall. 458; North v. Philbrook, 34 Me. 532; Fisher v. Fields, 10 Johns. *495; Wilcox v. Wheeler, 47 N. H. 488; Attorney General v. Meeting House Proprietors, 3 Gray 1; King v. Parker, 9 Cush. 71; Brooks v. Jones, 11 Met. 191; Welsh v. Allen, 21 Wend. 147; Kirkland v. Cox, 94 Ill. 400; Angell v. Rosenbury, 12 Mich. 241; Spessard v. Rohrer, 9 Gill 261; Wright v. Linn, 9 Pa. 433.     (3) That the donors to the charity were not the grantors in the deed, but the contributors to the erection of the building, and said grantors have no standing in this case: Methodist Church v. Remington, 1 W. 219; McGinnis v. Watson, 41 Pa. 9.

OPINION, MR. JUSTICE GREEN:

The grantors in the deed in question, in this case, granted and conveyed their entire estate in the land to trustees for a money consideration.    No condition was annexed to the conveyance. The trust was an express trust that the trustees should erect a house or place of worship for the use of the members of the Methodist Episcopal Church in the United States, and that they should forever permit ministers and preachers belonging to said church, and duly authorized, to preach therein.    The conveyance was to the trustees and their successors in office forever. The consideration named in the deed was a money considera-

tion of fifty dollars; and, as the lot was a small one, situated in Wilkins township, and there being no evidence on the record showing that it was of any greater value than fifty dollars, the presumption is that the lot was sold and conveyed for its full money value. The trustees were not required to erect the place of worship on the ground conveyed, though a reasonable implication might arise that the parties so intended. Still, no obligation to build on the premises enters into the title of the trustees, and hence their title could not be invalidated by an erection on other ground. In point of fact, a church building was erected in accordance with the trust, and on the premises conveyed. The building and ground having now become inadequate for the purposes of the congregation, they ask for a decree authorizing their sale free from the trust, the proceeds to be applied to the purchase of other ground and the erection of another church building thereon. The original purpose of the trust is preserved. A new building is to be erected for the use of the same beneficiaries, on another lot in the same town. There is nothing in the terms of the trust which confines the trustees to the particular piece of ground described, and there is no breach of the trust created by the deed, alleged or proved, against the allowance of the petition for the sale, except the erection of another building on another lot of ground. Passing by the question of the status of the exceptant, who is the widow of one of the grantors and a member of the church, to be heard against the petition, we recur to the more important question whether the title to the land would be invalidated by its abandonment for church purposes.

It has been so many times decided by this court that a conveyance of land to trustees for a charitable use does not create a conditional estate, but only a trust for the charitable use, not liable to be defeated by non-user or alienation, in the absence of an express condition, that a mere reference to some of the authorities is sufficient: Wright v. Linn, 9 Pa. 433; McKissick v. Pickle, 16 Pa. 140; Griffitts v. Cope, 17 Pa. 96; Pickle v. McKissick, 21 Pa. 232; Barr v. Weld, 24 Pa. 84; Brendle v. Ger. Ref. Congregation, 33 Pa. 415; Methodist Church v. Public Ground Co., 103 Pa. 608; Wilkes-Barre v. Wyoming Soc., 134 Pa. 616.

In the case of McKissick v. Pickle we said: "The grant,

being for a charity, could not be forfeited for non-user, nor for misuser, except under an express condition or contract; and, although in the latter case it may, yet it must be clearly, expressly, and strictly shown that the condition was broken." In many of the cases, as in this last, there were conditions or provisions accompanying the grant, and the question was whether the alleged acts of forfeiture set up were so plainly breaches of the express terms of the condition as to amount to a forfeiture. But, in the case we are considering, there was no condition, limitation, or restraint upon the grant, of any kind. It was a mere trust to do a particular thing, but with no condition inherent in the trust. In such cases, our decision in the case of Methodist Church v. Public Ground Co., 103 Pa. 608, is directly applicable. Chief Justice MERCUR, delivering the opinion, and speaking of the writing in controversy in that case, said: "No restraint was imposed on an alienation of the land. No construction of a reservoir, nor any work on the ground, was required to precede the right to demand a deed. No clause provided for a forfeiture or termination of the estate, in case the land ceased to be used as a reservoir. No right of re-entry was reserved by the grantor in any contingency. No technical word to create a condition was used. No other words were used, equivalent thereto, or proper to create a condition. The authorities show that the recital of the condition and a statement of the purpose for which the land is to be used, are wholly insufficient to create a conditional estate."

In the present case, it is perfectly clear that there was no condition, no restraint upon alienation, and no clause of forfeiture for any cause. If there was any dereliction on the part of the trustees, the remedy would be by a proceeding to compel them to perform the trust. But here there is no room for any such allegation, as the very object of the proposed sale is to carry out the provisions of the trust in such a manner as to more effectually accommodate the beneficiaries of the trust.

It was suggested rather than argued that, because there were no words of inheritance in the deed, the fee of the land did not pass. But the conveyance was to trustees and their successors in office forever, and the use was a charity, to continue perpetually. Neither Methodist Church v. Remington,

1 W, 219, nor Henderson v. Hunter, 59 Pa. 335, decides that the fee does not pass in such circumstances, and very many other cases decide that it does.   See Fisher v. Fields, 10 Johns. *495; King v. Parker, 9 Cush. 71; Wright v. Linn, 9 Pa. 433.

We perceive no force in the objection to the standing of the Sellers Chapel Methodist Episcopal Church of Braddock borough to ask for the decree.   The trust is to erect a house of worship for the use of the members of the Methodist Episcopal Church in the United States, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers of the said church, at their general conference in the United States.   The petition alleges that the petitioner conforms to these requirements, and no exception filed raises any question upon that subject.   The surviving trustee, John W. House, appears in writing, confesses the petition to be true, and submits to the order and direction of the court in the premises.   The presiding elder of the McKeesport district of the Pittsburgh conference of the Methodist Episcopal Church in the United States files a written approval of the action of the church in asking for the sale.   The decree of sale was very carefully drawn, preserving the proceeds of the sale for use according to the provisions of the deed of trust, and, in all respects, the rights of all persons who have any rights in the trust are especially protected and retained.   We discover no valid objection to the decree of the court below confirming the sale, and, therefore,

> The decree is affirmed, and appeal dismissed, at the cost of the appellant.

